# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**TONI R. DONAHUE, individual and on behalf of minor child, DCD,**

      **Plaintiff,**

      **v.**

**GOVERNOR SAM BROWNBACK,**

      **Defendant.**

**Case No. 18-2055-CM**

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Governor Sam Brownback's Motion to Dismiss (Doc. 12). Pro se plaintiff Toni R. Donahue filed this action against defendant on behalf of her disabled son, claiming the Freedom from Unsafe Seclusion and Restraint Act signed by defendant in 2015 is unconstitutional. Defendant moved to dismiss this action claiming he is entitled to immunity under the Eleventh Amendment to the United States Constitution and because plaintiff has failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is granted.

## I.     Background

Defendant signed the Freedom from Unsafe Seclusion and Restraint Act, K.S.A. § 72-6151 et seq., ("the Act") into law on May 27, 2015. Plaintiff alleges that because of the Act, her disabled son served "shock time" in a 5x4 isolation prison cell located in his autism classroom at Prairie Center Elementary School on at least six occasions between April 10, 2015 and October 23, 2015. Plaintiff claims her son suffered from emotional and physical trauma because of these incidents. Plaintiff blames the school district but maintains that defendant is ultimately responsible because the district was acting under the law defendant passed in May 2015. Plaintiff seeks relief against defendant in both his

individual and official capacities for violations of her and her son's constitutional rights under 42 U.S.C. § 1983, § 504 of the Rehabilitation Act of 1973, and "IDEA 2004." She also claims defendant is liable for failing to train and supervise social workers at the Department of Children and Families ("DCF"), failing to implement policy changes at DCF, and failing to train police officers in local police departments. She seeks both compensatory and injunctive relief.

Plaintiff has filed multiple lawsuits on the same subject matter. The present action was filed on January 31, 2018 and defendant filed his motion to dismiss on July 6, 2018.

## II. Legal Standards

Defendant moves to dismiss plaintiff's complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). A party asserting Eleventh Amendment Immunity may move to dismiss under Rule 12(b)(1) because "Eleventh Amendment Immunity concerns the subject matter jurisdiction of the district court." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

The court will grant a 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id.* "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal*, 453 F.3d at 1252.

Where, as here, the plaintiff proceeds pro se, the court construes the pro se filings liberally. *Hall v. Doering*, 997 F. Supp. 1445, 1451 (D. Kan. 1998) (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)). A court may not, however, supply "additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

### III. Analysis

Plaintiff brings claims against defendant in his official and individual capacities under 42 U.S.C. § 1983. She also seeks relief under § 504 of the Rehabilitation Act of 1973 and "IDEA 2004." The court will address defendant's alleged grounds for dismissal for each individual claim.

#### a. Official Capacity Claims under § 1983

The purpose of § 1983 is "to provide a remedy to parties deprived of constitutional rights by a state official's abuse of his position while acting under color of state law." *Haines v. Fisher*, 82 F.3d 1503, 1508 (10th Cir. 1996). Section 1983 imposes liability "for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Id.*

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). An official capacity suit is not against the official personally, "for the real party in interest is the entity." *Id.* at 166. Official capacity claims against municipalities brought under § 1983 are permitted under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The Supreme Court's holding in *Monell*, however, was "limited to local government units which are not considered part of the State for Eleventh Amendment purposes." *Quern v. Jordan*, 440 U.S. 332, 338 (1979). It is well-settled law that § 1983 does not "abrogate the

States' Eleventh Amendment Immunity." *Jones v. Courtney*, 466 F. App'x 696, 700 (10th Cir. 2012) (citing *Quern*, 440 U.S. at 338–40). Although state officials "literally are persons," a suit against a state official in his official capacity "is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Therefore, a suit against a state official in his official capacity "is no different from a suit against the State itself." *Id.*

Because plaintiff sues defendant in his official capacity as governor, her suit is against the State of Kansas itself. And because states are entitled to Eleventh Amendment immunity under § 1983, the court does not have subject matter jurisdiction over defendant in his official capacity for monetary damages.

A state official in his official capacity, however, is not immune when sued for injunctive relief because "official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10. Under *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court "carved out an exception to Eleventh Amendment immunity for suits against state officials seeking to enjoin alleged ongoing violations of federal law." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011). In determining whether the *Ex parte Young* doctrine applies, courts "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* at 1155. A state official sued in his official capacity for injunctive relief "must 'have some connection with the enforcement' of a challenged provision." *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014) (noting, "[a]n officer need not have a special connection to the allegedly unconstitutional statute; rather, he need only have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.").

Here, plaintiff seeks injunctive relief against defendant to discontinue the use of the isolation rooms she alleges are being used as a result of the passage of the Act, to implement security protections

such as cameras, to require the isolation rooms to be proportional to other classrooms, and to "address the critical gaps in agency protections," and provide training for police and DCF personnel to recognize and act on educator abuse against disabled children. Defendant, however, does not have the authority to provide the injunctive relief plaintiff seeks. The governor of the State of Kansas is not responsible for making decisions related to individual schools—such decisions are left to the independent school districts and Boards of Education. *See, e.g.,* K.S.A. § 72-1138(e)(1) ("The board may transact all school district business and adopt policies that the board deems appropriate to perform its constitutional duty to maintain, develop and operate local public schools."). And an official's "generalized duty to enforce state law, alone" is insufficient to subject them to a suit challenging a law that they have "no specific duty to enforce." *Bishop v. Oklahoma*, 333 F. App'x 361, 365 (10th Cir. 2009). Plaintiff cites *Robinson v. Kansas*, 117 F. Supp. 2d. 1124 (D. Kan. 2000), as authority that the governor is the proper defendant. In *Robinson*, the court held that the governor, in his official capacity, was the proper party in a suit claiming that allocation of public education funds under Kansas law was unconstitutional because the Kansas Constitution made the governor responsible for the enforcement of Kansas law. *Id*. at 1138. The governor may be the proper defendant when seeking prospective injunctive relief to prohibit the enforcement of discriminatory school funding, because the governor is ultimately responsible for the enforcement of the state budget. But plaintiff has not pleaded any facts to show that defendant has a "particular duty" to enforce the statute in question, only that he signed the bill into law. The individual school districts themselves make the decisions about the use of the isolation rooms as provided by the Act. *See* K.S.A. § 72-6153(g) ("Each local board shall develop and implement written policies to govern the use of emergency safety interventions in schools."). And the court is not in a position to order the State, a separate sovereign, to implement any trainings or programs for police or DCF. *See Brooks v. Nance*, 801 F.2d 1237, 1241 (10th Cir. 1986) (noting "[t]he scrupulous regard for the rightful

independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal rights may be preserved without it . . . .") (citing *Real Estate Ass'n v. McNary*, 454 U.S. 100 (1981)). For these reasons, the court determines plaintiff has failed to state a claim for injunctive relief against defendant in his official capacity.

### b. Individual Capacity Claims under § 1983

An individual capacity claim under § 1983 "seek[s] to impose personal liability upon a government official for actions he takes under color of state law." *Graham*, 473 U.S. at 165. To establish personal liability in a § 1983 case, a plaintiff must show "that the official, acting under color of state law, caused the deprivation of a federal right." *Id*. at 166. A victory in an individual capacity claim is, "a victory against the individual defendant, rather than against the entity that employs him." *Id.* at 167–68.

Plaintiff claims defendant violated her son's constitutional rights by signing the Act into law. Specifically, plaintiff alleges defendant ignored studies, information, data, and recommendations that all expressed concerns with the use of isolation rooms, and instead signed the Act into law, resulting in her son being incarcerated in these rooms on multiple occasions.

Defendant argues he is entitled to absolute legislative immunity for any liability resulting solely from his signing the Act into law. Legislators must be "immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951). Therefore, absolute legislative immunity "attaches to all actions taken, 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). The "sphere of legitimate legislative activity" also covers members of the executive branch when they are performing legislative acts. *See Savage v. Fallin*, 663 F. App'x 588, 591 (10th Cir. 2016). Claims

based on administrative actions of the executive branch, however, are not barred by legislative immunity. *Id.*

Plaintiff's allegations against defendant are based on his legislative function of signing the Act into law. This falls squarely into the "sphere of legitimate legislative activity" that is protected by absolute legislative immunity. Plaintiff claims the Act was bad-faith signed into law because defendant disregarded studies that warned against the use of these isolation rooms. But absolute legislative immunity is not waived simply because there is a "claim of an unworthy purpose." *Tenney*, 341 U.S. at 377. Plaintiff has not pleaded any other facts to show defendant's acts in his individual capacity resulted in the deprivation of her son's constitutional rights. For these reasons, the individual capacity claims are barred by absolute legislative immunity and dismissed for failure to state a claim under Rule 12(b)(6).

Any claims against defendant in his individual capacity for failing to train DCF personnel and police officers are also dismissed as § 1983 does not allow for liability based on a theory of respondeat superior. *See Iqbal*, 556 U.S. at 675 (noting "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

    *c. Rehabilitation Act*

The Rehabilitation Act of 1973 prohibits discrimination against disabled individuals in programs and activities receiving Federal financial assistance. 29 U.S.C. § 794(a). This includes operations of "a department, agency, special purpose district, or other instrumentality of a State or of a local government, . . . any part of which is extended Federal financial assistance." 29 U.S.C. § 794(b)(1)(A). To establish liability under the Rehabilitation Act, a party must prove that "(1) plaintiff is handicapped under the Act; (2) he is 'otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff." *Hollonbeck v. U.S. Olympic Comm.*,

513 F.3d 1191, 1194 (10th Cir. 2008). Plaintiff has not pleaded any facts to show that defendant is a "program" or "activity" that has received federal funds. Plaintiff has therefore not pleaded a prima facie case under the Rehabilitation Act, and the court dismisses this claim.

### d. IDEA

The Individuals with Disabilities Education Act, or "IDEA," 20 U.S.C. § 1400, et seq., is a federal statute that "imposes obligations on the states to provide certain benefits in exchange for federal funds." *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1226 (10th Cir. 2015). The purpose of IDEA is to, among other stated purposes, "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living," and to "ensure that the rights of children with disabilities and parents of such children are protected . . . ." 20 U.S.C. § 1400(d)(1)(A)–(B).

IDEA also created a "mandatory administrative framework for resolution of disputes over the education of children with disabilities." *Carroll*, 805 F.3d at 1227. A parent unhappy with any matter relating to their child's education covered under IDEA is entitled to a due process hearing. *Id*.; *see also* 20 U.S.C. § 1415(b)(6)(A); (f)(1)(A). If a parent is unsatisfied with the outcome of the hearing, they may appeal to the State educational agency. 20 U.S.C. § 1415(g)(1). These administrative procedures must be exhausted before a parent can file a civil action in the district court. *Carroll*, 805 F.3d at 1227.

Plaintiff has not pleaded any facts or provided any evidence that she has exhausted these mandatory administrative remedies before filing the present suit. She also has failed to show how defendant is liable under this act. For these reasons, the court dismisses any claims she brings under IDEA.

In conclusion, the court finds that plaintiff has failed to state a claim under Rule 12(b)(6) and that some of her claims are barred by sovereign immunity. The court is aware that plaintiff has filed at least two other lawsuits on this subject matter against defendant and other parties. Without commenting on the merits of her claim against any other parties, the court finds that as pleaded, plaintiff does not have a claim against defendant on this subject matter. The court therefore dismisses the complaint with prejudice except for the § 1983 official capacity claim for monetary damages, as Eleventh Amendment Immunity precludes suit in federal court only.

**IT IS THEREFORE ORDERED** that defendant's Motion to Dismiss (Doc. 12) is granted. All claims are dismissed with prejudice with the exception of the § 1983 official capacity claim for monetary damages which is dismissed without prejudice.

This case is closed. The clerk of the court is directed to enter judgment in favor of defendant and against plaintiff.

Dated October 24, 2018, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**